UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERITAGE LACE, INC.,
      Plaintiff,

-v-

UNDERWRAPS COSTUME
CORPORATION,
      Defendant.

18-CV-9796 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Heritage Lace, Inc. ("Heritage") brings this action against Defendant Underwraps Costume Corporation ("Underwraps"), asserting claims under the U.S. Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (Dkt. No. 24 ("AC") ¶ 1.)

Underwraps now moves, pursuant to Federal Rule of Civil Procedure 12(b)(3), to dismiss Heritage's claims for lack of venue, or, in the alternative, to transfer the case, pursuant to 28 U.S.C. § 1404(a), to the Central District of California ("Central District"). (Dkt. No. 25.) For the reasons that follow, the motion to dismiss is denied and the motion to transfer is granted.

**I. Background**

Neither party's principal place of business is located in this District. (*See* AC ¶¶ 3–4.) Heritage is a corporation operating principally out of Pella, Iowa. (AC ¶ 3.) Underwraps is a corporation operating principally out of Chatsworth, California, which is in the Central District. (Dkt. No. 26 at 3.)

Heritage owns the copyright to a "lace fabric with a spider web theme," referred to as a "Spider Web Mantle Runner," (AC ¶¶ 6, 10), and a "lace fabric with a Halloween theme," designated as the "Skeletons, Skulls and Spider Webs Design." (AC ¶¶ 19, 23.)

1

Heritage alleges that it initially discovered the infringement in January 2016 when Underwraps distributed representations of the Spider Web Mantle Runner on brochures (AC ¶ 14), and displayed the Skeletons, Skulls and Spider Webs Design on a "Skeleton Lace Poncho" at a trade show in New Orleans, Louisiana. (Dkt. No. 30 at 2.)

Underwraps sells the Skeleton Lace Poncho to "a few customers in New York," including in the Southern District of New York, but does not sell the Table Runners to any customers this District. (Dkt. No. 26 at 4.) At least some of Underwraps' products are displayed by sales representative Nigel FeBland at a showroom located at 230 Fifth Avenue in New York, New York ("Fifth Avenue showroom"). (Dkt. No. 30 at 3, 5; Dkt. No. 31 at 2.)

Heritage characterizes the Fifth Avenue showroom as Underwraps' "office and place of business" (AC ¶ 2), and alleges that the showroom was on Underwraps' website for at least two years until this litigation began. (Dkt. No. 30 at 1.) Underwraps disputes this characterization, responding that the showroom is only the office and place of business of FeBland, who is an independent sales representative working with approximately 30 other companies in addition to Underwraps, and who is compensated based on commission for sending orders to Underwraps' California offices to be processed. (Dkt. No. 31 at 2–3.)

In the event of court proceedings, Underwraps plans to call three witnesses, Payman Shaffa, Irene Shaffa, and Michael Shaffa, all of whom reside in the Central District (*see* Dkt. No. 26 at 4, 7), and for whom it would be a "substantial burden and expense" to travel to this District. (Dkt. No. 26 at 4.)

Heritage, for its part, "intends to subpoena witnesses in connection with the Underwraps New York showroom" in addition to calling Clelia Parisi, who is not an employee of Heritage, but who ordered some of the allegedly offending products to be delivered to her New York

office. (Dkt. No. 30 at 7.) Heritage also plans to call its Iowa-based Co-CEO, Daniel DeCook, who travels to New York for business, and for whom it is "significantly more convenient" to travel to New York for the litigation. (Dkt. No. 30 at 8.) Heritage may further call Heritage Co-President Tim Heerema, and other Heritage employees, who are also based in Iowa, and who would find it "more convenient" to travel to New York than to California. (Dkt. No. 30 at 8.)

Heritage brought this action for copyright infringement in this District, asserting that venue is proper under 28 U.S.C. § 1391 because "Underwraps has an office and place of business within this district, the infringing products complained of . . . were sold into this district and . . . a substantial part of the events giving rise to the claims asserted . . . occurred in this district." (AC ¶ 2.)

Underwraps has moved to dismiss Heritage's claims for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), asserting that a substantial part of the events giving rise to the claim did not occur in New York, or in the alternative, for a transfer of venue to the Central District, pursuant to 28 U.S.C. § 1404(a), arguing that the "alleged acts of infringement . . . originated in the Central District." (Dkt. No. 26 at 1.)

## II.     Dismissal Pursuant to Rule 12(b)(3)

Underwraps moves to dismiss this action pursuant to Federal Rule of Procedure 12(b)(3), arguing that venue is improper because a substantial part of the events giving rise to the claim did not occur in New York. (Dkt. No. 26 at 5.) This Court concludes, however, that venue is proper under 28 U.S.C. § 1400(a).

### A.     Legal Standard

"In deciding a motion to dismiss for improper venue, the court may examine facts outside the complaint to determine whether venue is proper. The Court must draw all reasonable

3

inferences and resolve all factual conflicts in favor of plaintiff." *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 609 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).

For actions relating to copyright, venue is proper "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Where the defendant is an entity, it is "deemed to reside" in a district where it is "subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Thus, if this Court may exercise personal jurisdiction over Underwraps in this action, then venue is also proper pursuant to 28 U.S.C. § 1400(a), and Underwraps' motion to dismiss must be denied.

B.      **Discussion**

In order to exercise personal jurisdiction over a non-domiciliary such as Underwraps, this Court must engage in a two-step analysis. First, it must determine whether the activities at issue in the suit fall under New York's long-arm statute, N.Y. C.P.L.R. § 302. *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163–64 (2d Cir. 2010). Second, it must confirm that exercising personal jurisdiction over the suit does not violate the Due Process Clause of the United States Constitution. *See id.* at 164. The Court determines whether exercising personal jurisdiction is constitutional first by engaging in a "minimum contacts inquiry," to see if the Defendant has "purposefully availed" itself to the laws and protections of New York, *id*. at 171 (alterations omitted), and second by engaging in a "reasonableness inquiry" to ensure that bringing the action in this District would not "offend traditional notions of fair play and substantial justice." *Id.* at 171, 173.

First, New York's long-arm statute extends jurisdiction over any party who "transacts any business within the state or contracts anywhere to supply goods or services in the state," as long as the suit arises from those acts. N.Y. C.P.L.R. § 302(a)(1); *see Aerotel, Ltd. v. Sprint Corp.,* 100 F. Supp. 2d 189, 192 (S.D.N.Y. 2000). The statute allows "proof of one transaction

in New York" to be "sufficient to invoke jurisdiction," and does not require the defendant to be "physically present" in the state. *Chloe*, 616 F.3d at 170. "[D]raw[ing] all reasonable inferences and resolv[ing] all factual conflicts" in the Plaintiff's favor, *Pablo Star*, 170 F. Supp. 3d at 609 (internal quotations omitted), the Court accepts Heritage's position that Underwraps is supplying goods through its "office and place of business" (AC ¶ 2), on Fifth Avenue in Manhattan. However even if the Court were to instead accept Underwraps' position, its actions nevertheless fall under the long-arm statute. If, as Underwraps contends, FeBland is merely an independent contractor who earns a commission (Dkt. No. 31 at 2), then by processing FeBland's orders (Dkt. No. 31 at 2–3), Underwraps is "contract[ing] . . . to supply goods" within the state of New York. *See Aerotel,* 100 F. Supp. 2d at 191. It is therefore evident that Underwraps' business activities fall within New York's long-arm statute.

Second, to determine whether exercising jurisdiction comports with due process, this Court must, as a threshold matter, engage in a minimum contacts inquiry: whether Underwraps "purposefully avail[ed] itself of the privilege of conducting activities" within New York, "thus invoking the benefits and protections of its laws." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Depending on the extent of "the totality of Defendants' contacts" with the state of New York, the Court may exercise either general jurisdiction over the party or specific jurisdiction over the party as it relates to the activities at issue in the instant case. *Chloe*, 616 F.3d at 164.

The Court concludes that it may exercise specific jurisdiction over Underwraps' activities directed toward the state of New York. In making this determination, the Court notes that "sending items to New York," even if the sales are processed elsewhere or part of "a nationwide market," is sufficient to establish specific jurisdiction over a cause of action relating to the

shipped products, so long as the shipments are "purposefully directed toward the forum [s]tate." *Chloe*, 616 F.3d at 171.

In *Chloe v. Queen Bee of Beverly Hills, LLC*, Chloé, a designer handbag brand, brought an action in this District for trademark infringement against Queen Bee, a company that sold allegedly infringing handbags online and maintained showrooms in Beverly Hills, California, and Huntsville, Alabama. 616 F.3d at 162. There, the Court denied Queen Bee's motion to dismiss for lack of personal jurisdiction, because "by offering bags for sale to New York consumers on [its] website and by selling bags . . . to New York consumers," the company had "purposefully availed" itself to the laws and protections of New York. *Id*. at 171.

Even without "draw[ing] all reasonable inferences and resolv[ing] all factual conflicts in favor of plaintiff," *Pablo Star*, 170 F. Supp. 3d at 609 (internal quotation marks omitted), Underwraps' own characterization of its contacts with this District demonstrates purposeful availment of the "benefits and protections" of New York laws. *MacDermid, Inc.*, 702 F.3d at 730 (internal quotation marks and citation omitted). Even if, as Underwraps asserts, it has no showroom in New York and FeBland is merely a contractor (Dkt. No. 31 at 2), its online sales were made through a third-party reseller (*see* Dkt. No. 26 at 4), and "very few" of its sales were made to persons in this District (Dkt. No. 31 at 3), Underwraps has still purposefully availed itself of the New York market by contracting with FeBland, who maintains an office in New York, by processing his orders, and by choosing to ship its products to New York addresses. (*See* Dkt. No. 31 at 2–3); *Chloe*, 616 F.3d at 171. This Court may therefore exercise specific jurisdiction over a cause of action related to the goods that Underwraps processed and shipped to New York.

6

"[T]he single act of an out-of-state defendant . . . shipping an item into New York, combined with . . . extensive business activity involving New York, gives rise to personal jurisdiction." *Chloe*, 616 F.3d at 165. Underwraps concedes that it sells the Skeleton Lace Poncho to "a few customers in New York" (Dkt. No. 26 at 4), and though it contends that it does not sell the Table Runners to any customers this District (*id.*), it has contracted to sell its goods with FeBland, thereby creating business activity there. That Underwraps' activity in New York is only a small part of its overall business is immaterial; rather, by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," Underwraps has given rise to specific jurisdiction in a suit related to any of its shipped goods. *Chloe*, 616 F.3d at 172 (citation omitted).

Because this Court may exercise specific jurisdiction over Underwraps as it relates to this case, it need not determine whether Underwraps' contacts with New York are so extensive as to establish general jurisdiction here. For this reason, the parties' dispute over whether the Fifth Avenue showroom is Underwraps' own "office and place of business" (AC ¶ 2; *see* Dkt. No. 26 at 3), is immaterial to the outcome of the personal jurisdiction determination.

Finally, this Court must assess the second component of the due process analysis, the reasonableness inquiry, to ensure that "the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Chloe,* 616 F.3d at 172–73 (internal quotation marks omitted). In this assessment, the Court considers whether the Defendant has presented "a compelling case" that jurisdiction is "unreasonable," *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002), based on: "(1) the burden on the defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the

shared interest of the several States in furthering fundamental substantive social policies." *MacDermid, Inc.*, 702 F.3d at 730 (citation omitted). The Court thus proceeds with an analysis of the factors, bearing in mind that "dismissals resulting from the application of the reasonableness test should be few and far between." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 575 (2d Cir. 1996).

With respect to the first factor, Underwraps would certainly bear some burden if its witnesses had to travel from California to New York to defend this suit. (*See* Dkt. No. 26 at 4.) However, the inconvenience cuts "both ways" because Heritage would also incur some burden by having its witnesses travel from Iowa to California, rather than to New York. *Chloe*, 616 F.3d at 173; (*see* Dkt. No. 30 at 8.) But even if forcing Underwraps to litigate in New York is a burden, "the argument would provide the defendant only weak support, if any, because the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago," *Bank Brussels Lambert*, 305 F.3d at 129–30 (internal quotation marks and citation omitted), and, "taken alone, it falls short of overcoming the plaintiff's threshold showing of minimum contacts." *Sherwin-Williams Co. v. C.V.*, No. 14 Civ. 6227, 2016 WL 354898, at *5 (S.D.N.Y. Jan. 28, 2016); *see also MacDermid*, 702 F.3d at 731 ("th[e] burden [of travel] alone does not render the exercise of personal jurisdiction unreasonable").

The Court next examines whether the state of New York has any particular interest in this suit. States often have no particular interest in a suit where "[n]either party is a citizen" and the state's laws are not implicated. *See Sherwin-Williams*, 2016 WL 354898, at *5. However, this Court is required to "draw all reasonable inferences and resolve all factual conflicts in favor of plaintiff," *Pablo Star*, 170 F. Supp. 3d at 609, when assessing a motion to dismiss for improper venue. In accordance with that standard, this Court must accept Heritage's characterization of

8

the Fifth Avenue showroom as Underwraps' "office and place of business." (AC ¶ 2). Viewed in that light, New York state has some interest in ensuring that an entity that operates within its state is doing so in accordance with copyright law. This factor therefore weighs somewhat in favor of the exercise of jurisdiction.

Concerning Heritage's interest in obtaining relief, Heritage "has an interest in obtaining relief for past and future violations of its copyrights" in a state where the Defendant has "purposefully established contacts . . . by offering goods for sale to consumers." *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 543 (S.D.N.Y. 2015). Therefore, the third factor also weighs in favor of the exercise of jurisdiction.

In considering the most efficient means to resolve this resolution, the witnesses most critical to the case at hand are located in the Central District, not in this District, causing the fourth factor to weigh against exercising jurisdiction here. *See Gmurzynska v. Hutton,* 257 F. Supp. 2d 621, 628 (S.D.N.Y. 2003), *aff'd,* 355 F.3d 206 (2d Cir. 2004).

"Finally, because [copyright] infringement is a matter of federal law, the shared interest of the several States in furthering fundamental substantive social policies is not implicated by this action." *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526, 546 (S.D.N.Y. 2018) (quoting *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010)) (internal quotation marks and alterations omitted).

Viewing the factors as a whole, Underwraps has not identified interests that demonstrably "outweigh those of the plaintiff" and thus have not presented "a compelling [enough] case" that exercising jurisdiction is "unreasonable." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 173–74 (2d Cir. 2013); *Bank Brussels Lambert*, 305 F.3d at 129.

In sum, exercising personal jurisdiction over Underwraps does not offend the Due Process Clause. Because Heritage has established that Underwraps, through making its goods available to New York consumers, is subject to personal jurisdiction in this District, venue is also proper pursuant to 28 U.S.C. § 1400(a). Accordingly, Underwraps' motion to dismiss for improper venue must be denied.

## III. Transfer of Venue

In the alternative, Underwraps asks the court to exercise its discretion to transfer this case pursuant to 28 U.S.C. § 1404(a) (Dkt. No. 25), while Heritage maintains that Underwraps has not met the requisite evidentiary burden to warrant a discretionary transfer. (*See* Dkt. No. 30 at 6.)

### A. Legal Standard

Under 28 U.S.C. § 1404(a), a district court may transfer the suit to another district if "the transferee district [is] one where jurisdiction over the defendant could have been obtained at the time suit was brought," and if "the transfer [is] in the interest of justice and convenience of the parties and witnesses." *In re CenturyLink, Inc. Sec. Litig.*, No. 13 Civ. 03839, 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18, 2014).

It is the burden of the party requesting a transfer to establish the relevant factors by a "clear and convincing showing," *Steck v. Santander Consumer USA Holdings Inc.*, No. 14 Civ. 6942, 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015) (citation omitted), balanced against a "strong presumption in favor of the forum of the first-filed suit." *Aerotel,* 100 F. Supp. 2d 189, 195 (S.D.N.Y. 2000).

### B. Discussion

Because Underwraps operates principally out of the Central District of California, (AC ¶ 4), the action could have been brought there. *See ESPN, Inc. v. Quiksilver, Inc.,* 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008). Thus, it remains for the Court to determine whether it is "in the

interest of justice and convenience of the parties and witnesses" to transfer the suit to the Central District. *See In re CenturyLink,* 2014 WL 1089116, at *1.

The Court considers the following factors, where "no single factor is determinative[:] . . . (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Steck*, 2015 WL 3767445, at *2.

In evaluating these factors, it is "well-established that district courts have broad discretion," *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003), but also that the plaintiff's choice of forum "should not be disturbed unless the balance of [the] factors tips decidedly in favor of a transfer." *John Wiley & Sons, Inc. v. Swancoat*, No. 08 Civ. 5672, 2009 WL 2486048, at *4 (S.D.N.Y. Aug. 14, 2009) (citation omitted). The evaluation of each factor proceeds below.

### 1. Convenience of the Parties

"The traditional starting point" of the analysis "is the residence of the parties." *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.*, 245 F. Supp. 2d 523, 526 (S.D.N.Y. 2003). Although a "transfer should not merely shift the burden of inconvenience from one party to the other," *MBCP Peerlogic LLC v. Critical Path, Inc.*, No. 02 Civ. 3310, 2002 WL 31729626, at *5 (S.D.N.Y. Dec. 5, 2002), this concern does not apply here, because neither party operates principally in the Southern District of New York. (*See* AC ¶¶ 3–4.) Because both parties would need to travel to the Southern District of New York for litigation, while only one party would

11

need to travel for litigation in the Central District (*See* AC ¶¶ 3–4), this factor weighs in favor of transfer.

2. **Convenience of the Witnesses**

The convenience of the witnesses is "the single most important factor in the transfer analysis." *Excelsior Designs,* 291 F. Supp. 2d at 185. The court considers the "materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (citation omitted).

Underwraps contends that it would be a "substantial burden and expense [for] all of [its witnesses] to travel to the Southern District of New York." (Dkt. No. 26 at 4.) Indeed, "all of Underwraps' witnesses reside in the Central District." (Dkt. No. 26 at 7.) Those witnesses include Payman Shaffa, who will testify regarding the purchase of the Table Runners design; Irene Shaffa, who will testify regarding "revenues earned and expenses incurred" in connection to the offending products; and Michael Shaffa, who will testify regarding his design of the Skeleton, Skulls and Spider Webs Design. (Dkt. No. 26 at 3–4.)

Meanwhile, Heritage intends to subpoena witnesses "in connection" with the Fifth Avenue showroom in addition to calling Clelia Parisi, "regarding her purchase of several examples of the accused products, which were delivered to her office in New York." (Dkt. No. 30 at 7.) Heritage also plans to call its co-CEO, Daniel DeCook, to testify regarding the "design and creation" and "registration of [the] designs," Co-President Tim Heerema, and "members of Heritage's design and sales groups," all of whom are based in Pella, Iowa, but for whom it would be "more convenient" to travel to New York than to California. (Dkt. No. 30 at 8.) For DeCook, this District is presumably more convenient because he travels to New York for business (*id.*),

but regardless of whether this action proceeds in this District or in the Central District, he would still need to commit to air travel.

"Typically in a copyright infringement action, the key witnesses are those . . . who were involved in the design, production, and sale of the allegedly infringing product." *Freeplay Music, LLC v. Gibson Brands, Inc.,* 195 F. Supp. 3d 613, 617 (S.D.N.Y. 2016). Because the sale of the designs is not in dispute (*see* Dkt. No. 26 at 5), the critical facts to be considered in this case concern whether the designs infringe Heritage's copyright. To that end, Payman and Michael Shaffa will testify regarding designs of the offending products (Dkt. No. 26 at 3–4), while DeCook's testimony will concern creation of and registration of those designs. (Dkt. No. 30 at 8.) The critical question in this case is less whether Heritage owns a copyright of the design at all, but whether the Underwraps infringed that copyright. Therefore, the Court concludes that the testimony of Payman and Michael Shaffa will likely be most critical to discerning whether the offending products infringed Heritage's copyright, when compared to DeCook's testimony, which will concern only the creation and registration of the copyright. Thus, this factor weighs in favor of transfer.

### 3. Location of Relevant Documents

Because "document production is not expected to be particularly voluminous in this case," and any documents can be sent "electronically or by mail" regardless of where the lawsuit is brought, (Dkt. No. 30 at 8–9), this factor is neutral. *See Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").

#### 4. Locus of Operative Facts

Although "copyright infringement is deemed to take place at the point of consumer purchase," *Lipton v. The Nature Co.*, 781 F. Supp. 1032, 1035 (S.D.N.Y. 1992) (citation and internal quotation marks omitted), any purchases made in this District can be weighed against other allegedly infringing activities relevant to the suit. *See Cartier v. D & D Jewelry Imports*, 510 F. Supp. 2d 344, 346 (S.D.N.Y. 2007).

In *Cartier v. D & D Jewelry Imports*, which concerned venue transfer for a copyright infringement claim, the Court noted that the case's only connection to New York was "the ordering of allegedly infringing items in New York and their shipment to New York," and was outweighed by the fact that the "allegedly infringing activities . . . occur[ed] largely in California." *Id*. Furthermore, the defendant was "located in California," its website was "operated out of California," and the "allegedly infringing items were shipped from California." *Id*. The Court concluded that the plaintiff's own ordering of the allegedly infringing product to New York established "only the most marginal connection to this venue," and was insufficient to weigh this factor in favor of venue in this District. *Id*.

In this case, Heritage argues that the Fifth Avenue showroom carrying the allegedly infringing lace creates a stronger case for venue in this District than do the connections at issue in *Cartier*. (*See* Dkt. No. 30 at 9.) While there is some dispute about whether the Fifth Avenue showroom is an "office and place of business" (AC ¶ 2), Heritage does not dispute that the showroom is owned by FeBland, and that FeBland also represents many other companies. (*See* Dkt. No. 30 at 1–3, 9.) Therefore, although more than one of the allegedly infringing designs appears to have been purchased by residents of this District, it appears that they may have been purchased either through a showroom run by a sales representative who also represents

14

approximately 30 other companies (Dkt. No. 31 at 2), or through another third-party seller. (*See* Dkt. No. 26 at 4.) Furthermore, "only a tiny fraction of Underwraps' total sales of the Poncho are made to customers in the Southern District." (Dkt. No. 26 at 4.) Because the alleged copyright infringement itself occurred in California, the Defendant is located in California, and only a small portion of purchases of the allegedly infringing products were made in this District, this factor weighs in favor of transfer.

### 5. Availability to Compel Attendance of Unwilling Witnesses

"In determining whether a transfer motion is appropriate, courts also examine the ability to compel the attendance of witnesses." *Excelsior Designs,* 291 F. Supp. 2d at 187 (citation omitted). Because neither party has alleged that potential witnesses would refuse to appear in New York, this factor is neutral.

### 6. Relative Means of the Parties

This factor considers "the relative means of the parties where an economic disparity between the parties exists." *Excelsior Designs,* 291 F. Supp. 2d at 186 (citation, internal quotation marks, and alterations omitted)., However, "when both parties are corporations . . . this factor is given little weight." *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004) (citation omitted).

In *AEC One Stop Grp., Inc. v. CD Listening Bar*, the court determined this factor to weigh slightly in favor of a defendant corporation that was one-tenth the size of the plaintiff corporation. *Id*. In this case, Underwraps is reported to be one-third to one-half the size of Heritage: it earned approximately $5 million in annual revenues last year, compared to Heritage's reported annual revenues of between $10 and 15 million. (Dkt. No. 26 at 3.) Therefore, this factor weighs only slightly in favor of transfer.

15

### 7. The Forum's Familiarity with Governing Law

"All federal courts are presumed to be fully capable of ruling on nationally applicable legal principles." *TM Claims Serv. v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 407 (S.D.N.Y. 2001) (citation omitted). Accordingly, this factor is neutral.

### 8. The Weight Accorded to the Plaintiff's Choice of Forum

The plaintiff's choice of forum receives the most deference if it is the plaintiff's "home state" or if the plaintiff is "engaged in ongoing business activity" there. *Freeplay Music*, 195 F. Supp. 3d at 620. Courts afford less deference to the plaintiff's choice of forum if the plaintiff "lacks significant contacts with the forum state." *Id*. (citation omitted). Heritage does not allege to be at home in the state of New York, nor does it allege ongoing business activity here. Therefore, although Heritage is afforded deference for its choice of forum, this deference may be overcome by other factors weighing in favor of a transfer.

### 9. Trial Efficiency and the Interests of Justice

"Since this action is in its infancy, a transfer . . . would not cause an undue delay." *MBCP Peerlogic*, 2002 WL 31729626, at *6 (citation omitted). Further, the Defendant resides and operates principally out of the Central District of California and would be burdened by considerable expense in traveling to New York for this litigation. (Dkt. No. 26 at 4.) Heritage is not headquartered in New York, nor does it allege to have offices or any other connection to this District. By bringing this suit in New York, Heritage has already demonstrated its willingness to litigate in a state far from where it resides. It would therefore not be unjust for this Court to transfer the suit to another venue, which is not substantially further from Heritage's home than this District.

In sum, Underwraps has satisfied its burden of "demonstrating by a clear and convincing showing that convenience and justice would support transfer" to the Central District of California. *Excelsior Designs,* 291 F. Supp. 2d at 188. Based on the totality of the circumstances, the Court concludes that the four factors in favor of transfer, balanced against the deference afforded to the Plaintiff's choice of forum, warrant transfer of this case to the Central District of California.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is DENIED, and Defendants motion to transfer to the Central District of California is GRANTED.

This action is hereby transferred to the United States District Court for the Central District of California.

The Clerk of Court is directed to close the motion at Docket Number 25, to effectuate the transfer, and to close the case on this Court's docket.

SO ORDERED.

Dated: August 16, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge